UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
TRAVIS WOODS,                                    :
an individual,                                   :
                                                 :
              Plaintiff,                         :
                                                 :
vs.                                              :     CASE NO.: 6:22-cv-876 (GTS/ATB)
                                                 :
                                                 :
                                                 :
FOX H, LLC,                                      :
                                                 :
              Defendant.                         :
---------------------------------------------------------x

## FIRST AMENDED COMPLAINT

Plaintiff, TRAVIS WOODS, by and through his undersigned counsel, hereby files this First Amended Complaint and sues FOX H, LLC ( hereinafter "Fox Honda" or "Defendant") for declaratory and injunctive relief, compensatory damages, statutory damages, attorneys' fees, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York State Civil Rights Law, N.Y. Civ. Rights Law § 40 *et seq.* ("NYSCRL"), and alleges:

## JURISDICTION AND PARTIES

1.  This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. This Court is vested with original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2.  This is an action for compensatory damages and statutory damages pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.,* and New York State Civil Rights Law, N.Y. Civ. Rights Law § 40 *et seq*. This Court is vested with supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

4. Plaintiff, TRAVIS WOODS, (hereinafter referred to as "MR. WOODS"), is a resident of the State of New York, Oneida County.

5. MR. WOODS is a qualified individual with a disability under the ADA, the NYSHRL, and the NYSCRL. MR. WOODS has paraplegia because of a spinal cord injury.

6. Due to his disability, MR. WOODS is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, MR. WOODS is unable to walk, stand, or use his legs without assistance.

7. MR. WOODS has a valid New York driver's license and does not own a vehicle. However, MR. WOODS often borrows his girlfriend's vehicle which is equipped with permanent hand controls, and he is able to safely drive her vehicle.

8. Upon information and belief, FOX H, LLC is a domestic limited liability company organized in the state of New York and doing business in Cayuga County.

9. Upon information and belief, FOX H, LLC can be contacted at:

> c/o Laurence M. Smith, Esq.
> Chiesa Shahinian & Giantomasi
> One Boland Drive
> West Orange, NJ 07052

10. Upon information and belief, FOX H, LLC is the owner and/or operator of Fox Honda, located at 320 Grant Avenue, Auburn, New York 13021.

11. Defendant is obligated to comply with the ADA.

12. All events giving rise to this lawsuit occurred in the Northern District of New York, Cayuga County, New York.

13. Defendant is a place of public accommodation, specifically a sales establishment that sells new and used cars, Honda parts, and services Honda vehicles.

14. On November 10, 1998, the Department of Justice ("DOJ') issued Letter 218 to offer guidance on a car dealership's obligation to provide hand controls so that individuals with mobility impairments could test drive vehicles.[1] The DOJ explained:

> Expense is one factor that may properly be weighed in determining whether it is readily achievable for GM dealerships to obtain and install hand controls in cars test driven by individuals with disabilities. Because of the relative low cost to a dealership of having a set of hand controls available for installation, it is unlikely that the expense of hand controls themselves would make their installation not readily achievable. A related issue is whether certain hand control devices cause damage, rendering test driven cars less valuable upon sale. It may not be readily achievable to install hand controls for test drives if those hand controls caused such damage.
>
> Safety considerations also may factor into the analysis.
>
> To the extent that certain vehicle models cannot safely be fitted with hand controls, provision of hand controls on those vehicles is not required. For a safety concern to be considered legitimate, it must be based on actual risks to the safe operation of the services provided.
>
> The time required to install hand controls and the availability of mechanics to perform the installation are other factors to be considered under the readily achievable standard. Unlike when renting cars, consumers normally do not make appointments in advance to visit car dealerships and test drive cars. However, an experienced mechanic generally takes only ten to fifteen minutes to install hand controls. A dealership that has trained mechanics on site during showroom hours likely could provide hand-controlled cars for a customer to test drive without any advance notice. The customer would simply have to wait for a short amount of time for the mechanic to install the hand controls on the car the customer desired to drive. If the customer wanted to test drive more than one

---

[1] https://www.justice.gov/crt/letter-218 (last visited Sept. 6, 2022).

        car, he would have to wait while the mechanic removed the hand controls from the first car driven and then installed them on subsequent cars. In the case where a mechanic is not on site and available whenever a dealership showroom is open to customers, then hand-controlled test drives might only be readily achievable after some limited, legitimate amount of notice.

15. Honda, the manufacturer of the vehicles sold by Defendant, states that its goal is to "create a safer, smarter world in which people experience the joy of mobility."[2]

16. Nonetheless, despite Honda's stated commitment to empowering mobility, Defendant has discriminated against MR. WOODS by refusing to remove barriers to accessibility so that MR. WOODS can test drive any of its vehicles prior to purchase.

### Mr. Woods Gave Defendant Notice that He Needed Hand Controls to Test Drive a Vehicle.

17. MR. WOODS has paraplegia because of a spinal cord injury and uses hand controls to operate a vehicle.

18. MR. WOODS is in the market to purchase a vehicle, so he contacted Fox Honda on June 23, 2022, to inquire about setting up a test drive.

19. MR. WOODS utilized the chat box on Fox Honda's website and asked: "Hi I use a wheelchair and would like to test drive a Honda accord do you have hand controls?"

20. Beth G., an employee of Fox Honda, responded to MR. WOODS' inquiry and stated that a sales specialist would follow up with MR. WOODS via email.

21. Later the same day, MR. WOODS received the following email from Julia Towers, an employee of Fox Honda:

---

[2] http://www.honda.com/about (last visited Sept. 6, 2022).



22. By contacting Defendant through its online messaging system, MR. WOODS gave Defendant notice that he would need portable hand controls installed on any of the vehicles he wanted to test drive prior to going to Fox Honda's dealership.

23. Nonetheless, Defendant refused to provide MR. WOODS with hand controls so that he could test drive any of their vehicles.

24. Rather than providing MR. WOODS with portable hand controls, Defendant, through its employee, simply stated that they didn't have any vehicles with hand controls. Defendant's employee did not offer MR. WOODS any accommodations so that he could test drive any of their vehicles.

25. Thus, MR. WOODS would not be able to test drive a vehicle from Defendant's dealership

prior to purchasing a vehicle.

26. MR. WOODS was deterred from visiting Defendant's dealership because he knew he would be unable to test drive any of their vehicles.

**Installing Portable Hand Controls on a Vehicle for a Test Drive is Readily Achievable.**

27. Fox Honda is a member of the Auburn Auto Group and is the "leading provider of new and used Honda cars to greater Syracuse."[3] The Auburn Auto Group consists for four different car dealerships that have been in business for close to forty years.[4]

28. Fox Honda's service department has "Factory Trained Technicians" and "state-of-the-art equipment."[5]

29. Upon information and belief, portable hand controls can be easily and quickly installed in most vehicles.

30. Upon information and belief, the temporary installation of portable hand controls does not cause any damage to a vehicle.

31. Upon information and belief, portable hand controls can be purchased online for between $200.00 and $400.00.

32. Upon information and belief, portable hand controls can be installed and safely operated on Honda vehicles.

33. Upon information and belief, mechanics or other staff working at Defendant's dealership

---

[3] https://www.fox-honda.com/ (last visited Sept. 6, 2022).
[4] https://www.foxdealerships.com/ (last visited Sept. 6, 2022).
[5] https://www.fox-honda.com/honda-service.htm (last visited Sept. 6, 2022).

know or should know how to properly install portable hand controls onto a Honda vehicle.

34. Despite the relative ease of purchasing and installing portable hand controls, Defendant refused to provide MR. WOODS with portable hand controls so he could test drive any of its vehicles.

35. Defendant is part of an auto group that has four dealerships that have been operating for almost forty years so it would be relatively inexpensive for it to purchase a set of portable hand controls for its customers to use.

36. Defendant has the "Factory Trained Technicians" and therefore a service technician at Defendant's dealership should be able to install portable hand controls.

37. Nonetheless, Defendant refused to provide MR. WOODS with a set of portable hand controls so he could test drive a vehicle. Defendant did not claim that installing portable hand controls would be unsafe, too expensive, damage the vehicle, or difficult to install.

## COUNT I - VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

38. MR. WOODS realleges and reavers Paragraphs 1 - 37 as if they were expressly restated herein.

39. Defendant's dealership is a place of public accommodation, subject to the ADA, generally located at 320 Grant Avenue, Auburn, New York 13021.

40. Fox Honda is located about eighty (80) miles away from MR. WOODS's home.

41. MR. WOODS has paraplegia because of a spinal cord injury and is a person with a disability within the meaning of 42 U.S.C. § 12102(2).

42. MR. WOODS desires to test drive a vehicle from Defendant's car dealership. MR. WOODS cannot operate a vehicle with his legs and requires hand controls to drive a vehicle.

43. The ADA requires public accommodations to remove barriers to access for persons with disabilities where it is readily achievable for them to do so 42 U.S.C. § 12182(b)(2)(A)(iv) and 28 C.F.R.§ 36.304.

44. The ADA also requires a public accommodation to make reasonable modifications to its policies and practices as necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to persons with disabilities, as long as doing so does not fundamentally alter the nature of its goods, services, facilities, privileges, advantages, or accommodations, 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302.

45. The ADA prohibits public accommodations, including those operating car dealerships, from discriminating against an individual on the basis of disability in the full and equal enjoyment of its goods, facilities, privileges, advantages, accommodations, and services. 42U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

46. By failing to provide MR. WOODS with hand controls so he could test drive its vehicles, Defendant denied MR. WOODS equal access to its goods, privileges, accommodations, advantages, and services, in violation of 42 U.S.C. § 12182(a).

47. MR. WOODS plans to and will visit Defendant's dealership in the future as a patron.

48. MR. WOODS presently fears that he will encounter the barriers to access which exist at Defendant's dealership if he visits the dealership to test drive a vehicle in the near future.

49. MR. WOODS intends to and will visit Defendant's dealership to utilize the goods and

services offered at the dealership, including test driving a vehicle, in the future but fears that the Defendant will continue to discriminate against him by failing to provide him with modifications so he can test drive any of its vehicles.

50. Upon information and belief, all barriers to access and ADA violations still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA, even though removal is readily achievable.

51. Upon information and belief, removal of the discriminatory barriers to access at Defendant's dealership is readily achievable, reasonably feasible, could be easily accomplished, and would not place an undue burden on Defendant.

52. Upon information and belief, removal of the barriers to access at Defendant's dealership would provide MR. WOODS with an equal opportunity to participate in, or benefit from, the goods, services, and accommodations offered to the general public at the dealership.

53. Upon information and belief, Defendant has failed to adopt any alternatives to barrier removal which would provide MR. WOODS with equal access to the accommodations which are offered for public use at the dealership.

54. Providing and installing portable hand controls in its vehicles so they can be test driven by individuals with disabilities is readily achievable by Defendant because portable hand controls are inexpensive, easy to install, and do not cause any damage to a vehicle.

55. MR. WOODS has retained the undersigned counsel and is entitled to recover reasonable attorneys' fees, costs and litigation expenses from Defendant pursuant to 42 U.S.C. § 12205.

## COUNT II - VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
## (NEW YORK STATE EXECUTIVE LAW, §§ 296-297)

56. MR. WOODS hereby incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as if they were expressly set forth herein.

57. As the owner, manager, lessee, and/or proprietor of a place of public accommodation within the jurisdiction of the State of New York, Defendant is obligated to comply with the provisions of the NYSHRL, N.Y. Exec. Law § 296(2).

58. N.Y. Exec. Law § 296(2) provides: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

59. The conduct alleged herein discriminates against MR. WOODS on account of his disability.

60. The conduct alleged herein violates the NYSHRL, N.Y. Exec. Law § 296(2).

61. Defendant has violated the NYSHRL by depriving MR. WOODS of the full and equal enjoyment of the accommodations, advantages, facilities, and privileges offered at the Defendant's dealership, namely the ability to test drive one of its vehicles prior to purchase.

62. Defendant has violated the NYSHRL by failing to remove the barriers to access and make reasonable modifications at its dealership.

63. Upon information and belief, removal of the discriminatory barriers to access at Defendant's dealership is readily achievable, reasonably feasible, could be easily accomplished, and would not place an undue burden on Defendant.

64. Defendant's conduct has resulted in a cognizable injury to MR. WOODS.

65. MR. WOODS has been damaged and will continue to be damaged by this discrimination as more fully set forth above.

66. As a direct and proximate result of Defendant's unlawful discrimination in violation of the NYSHRL, MR. WOODS has suffered mental anguish, inconvenience, emotional distress, frustration, anxiety, humiliation, loss of autonomy, and an invasion of his civil rights.

67. MR. WOODS prays for judgment for damages to pursuant to N.Y. Exec. Law § 297(4), and all other relief allowed by law.

## COUNT III - VIOLATION OF NEW YORK STATE CIVIL RIGHTS LAW
### (N.Y. Civ. Rights §§ 40-c and 40-d)

68. MR. WOODS hereby incorporates by reference all allegations contained in all preceding paragraphs of this Complaint as if they were expressly set forth herein.

69. As the owner, manager, lessee, and/or proprietor of a place of public accommodation within the jurisdiction of the State of New York, Defendant is obligated to comply with the provisions of the NYSCRL, N.Y. Civ. Rights § 40 *et seq*.

70. MR. WOODS has complied with the notice requirements of N. Y. Civ. Rights § 40-d, as notice of this action was served upon the attorney general prior to or concurrently with the initiation of this suit.

71. Section 40 of the NYSCRL states that "All persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations. . . ."

72. Section 40-c of the NYSCRL states that "[n]o person shall, because of . . . disability . . . be subjected to any discrimination in his or her civil rights . . . by any firm, corporation or

11

institution. . . ."

73. The conduct alleged herein discriminates against MR. WOODS on account of his disability.

74. The conduct alleged herein violates the NYSCRL.

75. Defendant has violated the NYSCRL by depriving MR. WOODS of the full and equal enjoyment of the accommodations, advantages, facilities, and privileges offered by Defendant at its dealership, namely the ability to test drive any of its vehicles.

76. Defendant has violated the NYSCRL section 40-c, *inter alia*, by subjecting MR. WOODS, as a person with a disability, to discrimination in his civil rights.

77. Defendant has further violated the NYSCRL by being in violation of the rights provided under the ADA and the New York State Human Rights Law, N.Y. Exec. Law § 296.

78. Defendant's conduct has resulted in a cognizable injury to MR. WOODS.

79. MR. WOODS has been damaged and will continue to be damaged by this discrimination as more fully set forth above.

80. MR. WOODS prays for judgment pursuant to N.Y. Civ. Rights section 40-d, including statutory damages, and all other relief allowed by law.

WHEREFORE, MR. WOODS demands judgment against Defendant, and requests the following relief:

   A. That this Court declare that Defendant is in violation of the ADA, NYSHRL, and NYSCRL;

   B. That this Court enter an Order directing Defendant to provide portable hand controls or other adaptive driving devices to individuals with disabilities requesting such accommodations at no cost to the customer;

C. That this Court enter an Order awarding MR. WOODS compensatory damages, as provided for in N.Y. Exec. Law § 297(4);

D. That this Court enter an Order awarding MR. WOODS statutory damages, as provided for in N.Y. Civ. Rights section 40-d;

E. That this Court award reasonable attorneys' fees, costs (including expert fees), and other expenses of suit, to MR. WOODS, pursuant to 42 U.S.C. § 12205; and

F. That this Court award such other and further relief as it deems necessary, just and proper.

Respectfully Submitted,

BIZER & DeREUS, L.L.C.
Attorneys for Plaintiff
Andrew D. Bizer (NY Bar # 4208955)
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/ Andrew D. Bizer
    Andrew D. Bizer